FILED
2026 Feb-25  PM 03:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

**CHERYL S. STITH,**

  **Plaintiff,**

**v.**                                              **Case No. 5:25-cv-1340-HDM**

**HOLLY SUTHERLAND,** *et al.*,

  **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Cheryl S. Stith, proceeding *pro se*, commenced this action against Defendants Dr. Holly Sutherland, Dr. Harold Brian Clayton, Tina Kimbrell, Laura Smith, and Dr. Josh Swindall (collectively, "Defendants"), all of whom are associated in some capacity with Hartselle City Schools in Hartselle, Alabama. The operative pleading in this matter is Stith's Third Amended Complaint (the "Complaint"), in which she alleges that Defendants violated her First and Fourteenth Amendment rights, as well as her minor child's Fourteenth Amendment rights, in a series of interactions from May to July of 2025. (Doc. 20). Before the court is Defendants' Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 23). Stith opposed dismissal, (doc. 24), to which Defendants replied in turn, (doc. 32). Having considered the pleadings, the

parties' briefing, and the applicable law, Defendants' Motion to Dismiss is due to be **GRANTED** for the reasons stated below.

## FACTUAL BACKGROUND[1]

Plaintiff Cheryl S. Stith is the mother of a minor child (the "child"), (doc. 20, ¶¶ 1, 8), whom she homeschooled through the child's completion of fifth grade, *id.*, ¶ 10. Wanting her child to transition to the public school system, Stith relocated to Hartselle, Alabama, and enrolled the child in Hartselle Junior High, which she specifically selected for its competitive robotics program. *Id.* Stith alleges that Defendants are connected to Hartselle City Schools in the following ways: Dr. Holly Sutherland is currently the school superintendent, *id.*, ¶ 15, Dr. Harold Clayton previously held this role, *id.*, ¶ 16, Tina Kimbrell is the principal of Hartselle Junior High, *id.*, ¶ 17, Laura Smith is a teacher and robotics coach at Hartselle Junior High, *id.*, ¶ 18, and Dr. Josh Swindall is a member of the Hartselle Board of Education, *id.*, ¶ 19. The factual allegations in Stith's Complaint concern three distinct sequences of events, which may be categorized as the GroupMe allegations, the Dallas allegations, and the internal investigation.

---

[1] For purposes of ruling on Defendants' Motion to Dismiss, the court will assume that all well-pleaded facts in Stith's Complaint are true. *See, e.g.*, *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006).

A. <u>The GroupMe Allegations</u>

After her child enrolled at Hartselle Junior High and joined the robotics team, Stith was a member of a group message for parents of other students on the team that was housed on the social networking application GroupMe. *See id.*, ¶ 22. In the lead-up to a May 2025 trip to Dallas, Texas, for a robotics competition, *id.*, ¶ 21, Stith posted in the parents' GroupMe to mention that her child stated that "they didn't put the snacks out," *id.*, ¶ 23. Defendant Laura Smith replied, "I can assure you that [Stith's child] got enough to eat. Laura Miller brought a wonderful spread." *Id.* After Stith's child informed her that he/she was only referring to his/her own snacks, *id.*, ¶ 24, Stith posted a short message in the GroupMe chat defending her child and "clarifying the misunderstanding" that did not name or identify Coach Smith, *id.*, ¶ 25.

Coach Smith "demanded" that Stith remove the post, claiming that it was affecting her reputation, but she (Coach Smith) refused to remove her own post. *Id.*, ¶ 26. Stith later apologized to Coach Smith, who did not reply. *Id.*, ¶ 27. Following this exchange with Coach Smith, Stith contacted Principal Kimbrell to "express[] concern that her [child] might be unsafe as a result of Defendant Smith's hostility," *id.*, ¶ 41, but Principal Kimbrell informed Stith that she saw no issues with the GroupMe exchange, *id.*, ¶ 42.

B. The Dallas Allegations

Later that month, after the GroupMe incident, Stith's child and the rest of the Hartselle Junior High robotics team traveled to Dallas, Texas, for a competition. *Id.*, ¶¶ 21, 44. While in Dallas, a parent—using GroupMe—posted a team photo that did not include Stith's child "despite [the child's] full participation." *Id.*, ¶ 44. Stith questioned the omission of her child from the photo, whereupon Coach Smith "instructed parents to post their own photographs of the team," *id.*, ¶ 45, which did nothing to remedy the situation because Stith's child had been omitted from all of the photos, *id.*, ¶ 46. Stith asserted in the GroupMe that this was bullying. *Id.*, ¶ 48.

While still in Dallas, and after the incidents with the team photos, Coach Smith publicly reprimanded Stith's child for an unspecified offense. *Id.*, ¶¶ 49–51. Stith sent Coach Smith a message asking to speak with her about the situation. *Id.*, ¶ 56. While Stith and her child were standing in line to enter the competition, Coach Smith approached them and "demanded" that Stith's child attend a team meeting. *Id.*, ¶¶ 57–58. Stith informed Coach Smith that her child would not be attending the meeting and the "conversation became tense." *Id.*, ¶ 59.  Coach Smith said she was embarrassed, and Stith replied that she should be. *Id.* Coach Smith suggested they step away from the line to discuss the situation, and, having done so, they called Principal Kimbrell to mediate. *Id.*, ¶ 60. After Principal Kimbrell "appeared to side with [Coach] Smith," Stith walked away. *Id.*, ¶ 61. Stith also alleges that—at some

4

unspecified time—she "requested an investigation into the questionable handling of fundraising donations" for the trip to Dallas. *Id.*, ¶ 95.

C. Stith's Internal Complaint and Investigation

On May 15, 2025, after the GroupMe and Dallas incidents described above, Stith filed a formal written complaint with Hartselle officials about Coach Smith's alleged treatment of her child and cultivation of an "unfair environment within the robotics program." *Id.*, ¶ 64. After Stith submitted her complaint, Principal Kimbrell claimed that Stith "had acted up in front of children, snatched the phone, that there were witnesses, and that security was involved," although Stith insists that "[n]one of this occurred." *Id.*, ¶ 65. Before a meeting regarding Stith's complaint, Principal Kimbrell called her and "repeated false accusations multiple times over the phone," *id.*, ¶ 69, which Stith refuted as lies, *id.*, ¶ 70. Stith also alleges that Principal Kimbrell "knowingly made and circulated [these] false statements" about Stith's behavior in Dallas. *Id.*, ¶ 75.

After Stith filed her complaint, Principal Kimbrell called a meeting to discuss Stith's child. *Id.*, ¶ 85. "To secure [Stith's] attendance" at the meeting, Principal Kimbrell allegedly removed Stith's child from class and "required" the child to call Stith from a personal cell phone. *Id.* Once Stith arrived at the meeting, at which Dr. Swindall was also present while "claiming neutrality," *id.*, ¶ 88, Principal Kimbrell confronted her to ask why Stith had complained to the Hartselle City Board of

Education, "stating that such complaints affect her job," *id.*, ¶ 86. Stith makes no further allegations about the meeting, but "[o]nly days later," the robotics team held tryouts under the supervision of two other parents, including one about whom Stith had previously expressed concerns. *Id.*, ¶ 89. Both of those parents' children were ultimately selected for the team, while Stith's child was not. *Id.*, ¶ 90. Stith alleges that Dr. Clayton and Dr. Swindall "signed off on the exclusion of [her child] from the robotics team." *Id.*, ¶ 143. At the end of the school year, Principal Kimbrell advised Stith not to attend a school-sponsored awards ceremony because of the ongoing disputes. *Id.*, ¶¶ 103–104.

On July 7, 2025, Stith submitted a second written complaint to Superintendent Sutherland and the Board of Education, this time about the unfair selection process for the robotics team. *Id.*, ¶ 97. In response, Coach Smith and Principal Kimbrell told Superintendent Sutherland that Stith's child "just did not make the team" and that they had no issues with Stith personally. *Id.*, ¶ 99. Superintendent Sutherland told Stith she would investigate the alleged retaliation and exclusion, *id.*, ¶ 108, but never contacted Stith further, *id.*, ¶ 111.

Stith commenced this lawsuit on August 18, 2025, (doc. 1), and, after repleading her complaint three times, (doc. 9; doc. 16; doc. 20), three claims are before the court. In Count One, Stith alleges that Defendants' conduct over the course of events described *supra* amounts to retaliation against her for exercising

her First Amendment right to free speech. *Id.*, ¶¶ 150–154. In Count Two, Stith alleges that Defendants violated her child's Fourteenth Amendment right to due process by excluding the child from team recognition, disciplining the child unfairly, manipulating the team's selection process, and barring Stith from the awards ceremony. *Id.*, ¶ 155–158. In Count Three, Stith alleges that Defendants violated the Fourteenth Amendment "by misusing her child to intimidate her" and subjecting the child to "arbitrary discipline" and exclusion from educational opportunities. *Id.*, ¶¶ 159–163. Notwithstanding Stith's assertion of claims on the child's behalf, the child is not a party to this action. *See id.*, ¶ 1.

## STANDARD OF REVIEW

Defendants move to dismiss Stith's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 23 at 4). Rule 12(b)(1) permits dismissal of a complaint for a lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are limited in their subject-matter jurisdiction and may only hear the types of cases permitted by Congress or the Constitution. *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). If, at any point in the litigation, the court finds it lacks jurisdiction, it must *sua sponte* dismiss the case. Fed. R. Civ. P. 12(h)(3).

A court may dismiss a claim or case under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive such a motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Stith is not a lawyer and is proceeding *pro se* in this matter. (Doc. 20, ¶ 2). Although the Supreme Court and Eleventh Circuit have instructed courts to afford greater leeway to the pleadings of *pro se* litigants, *Dean v. Barber*, 951 F.2d 1210, 1213 (11th Cir. 1992) (citations omitted), such plaintiffs are still subject to the Federal Rules of Civil Procedure, *see, e.g.*, *Velez v. Reynolds*, 770 F. App'x 528, 528 (11th Cir. 2019) (per curiam).

## ANALYSIS

Defendants' Motion to Dismiss, (doc. 23), is due to be **GRANTED** and Stith's Complaint **DISMISSED** in its entirety. In light of the multiplicity of claims in the Complaint—three claims against five defendants, most of whom are named in both their official and individual capacities—the court will dispose of them in the following manner to facilitate the most structured analysis: (1) all claims asserted by

Stith on behalf of her minor child must be dismissed because a parent may not represent a child *pro se* in federal court, (2) all claims asserted against Defendants in their official capacities are due to be dismissed because Stith has not satisfied the standard for pleading a Section 1983 claim against a government entity, and (3) Defendants are entitled to qualified immunity from Stith's remaining claims.

Stith has brought all of her claims pursuant to 42 U.S.C. § 1983, (doc. 20 at 16), which, in relevant part, states as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. The Supreme Court has held that § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation and internal quotation marks omitted).

### A. Stith May Not Represent Her Child *Pro Se*

To the extent that—anywhere in the Complaint—Stith asserts claims on behalf of her minor child, such claims are due to be dismissed because a parent may not litigate a minor child's claims *pro se* in federal court. Although federal law permits parties to appear in court and prosecute civil actions without the assistance of counsel, they may only do so to "plead and conduct *their own cases*," 28 U.S.C.

§ 1654 (emphasis added), not on behalf of others. The Eleventh Circuit has held that "parents who are not attorneys may not bring a *pro se* action on their child's behalf," which "helps to ensure that children rightfully entitled to legal relief are not deprived of their day in court by unskilled, if caring, parents." *Devine v. Indian River Cnty. Sch. Bd.*, 121 F.3d 576, 582 (11th Cir. 1997), *overruled in part on other grounds by Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007). *See also FuQua v. Massey*, 615 F. App'x 611, 612 (11th Cir. 2015) (per curiam). Consequently, an action "where a parent attempts to represent their child *pro se*[] is subject to dismissal." *Baptiste v. Bourland*, No. 1:21-cv-22159, 2022 WL 21778382, at *2 (S.D. Fla. June 10, 2022), *report and recommendation adopted*, No. 21-22159, 2022 WL 21778380 (S.D. Fla. June 30, 2022).

In her Complaint, Stith concedes that she is not an attorney and is proceeding *pro se*, (doc. 20, ¶ 2), and states that she is suing "for violations of her First Amendment right to free speech *and her* [*child's*] *Fourteenth Amendment right to equal protection under the law*," *id.*, ¶ 1 (emphasis added). In Count Two, Stith exclusively alleges that Defendants violated her child's Fourteenth Amendment rights, not her own. *See id.*, ¶¶ 155–58. In Count Three, Stith does allege that Defendants violated her own Fourteenth Amendment rights, but she also explicitly says the same about her child. *Id.*, ¶ 163. Because *pro se* parties may only represent themselves in federal court, *Devine*, 121 F.3d at 582; 28 U.S.C. § 1654, Stith's

Complaint is subject to dismissal to the extent that she purports to represent her minor child, *FuQua*, 615 F. App'x at 613; *Baptiste*, 2022 WL 21778382, at *2. Therefore, the court **DISMISSES WITHOUT PREJUDICE** Count Two in its entirety and Count Three to the extent that it alleges claims on behalf of Stith's child pursuant to Rule 12(b)(6). *FuQua*, 615 F. App'x at 612–13 (affirming that Rule 12(b)(6) is a proper procedural mechanism for dismissing a parent's attempt to represent his or her child *pro se*). Nothing in this Memorandum Opinion adjudicates any claim the minor child may assert in a separate action through counsel or a properly appointed representative.

After Defendants filed their Motion to Dismiss, Stith filed a Motion to Appoint Guardian Ad Litem or Counsel for Minor Plaintiff pursuant to Federal Rule of Civil Procedure 17(c), (doc. 26), which remains pending. "It is well established that '[t]he appointment of a guardian ad litem is a procedural question controlled by Rule 17(c).'" *Burke v. Smith*, 252 F.3d 1260, 1264 (11th Cir. 2001) (citation omitted) (alteration in original). Rule 17(c) does allow a court to appoint a guardian *ad litem* to protect a minor "who is unrepresented in an action," Fed. R. Civ. P. 17(c)(2), but doing so in this matter would not cure the absence of counsel to prosecute the case on the child's behalf. Furthermore, there is no constitutional right to counsel in a civil case. *See, e.g.*, *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). The appointment of counsel in a civil matter is "a privilege that is justified only by

exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." *Dean*, 951 F.2d at 1216 (citation omitted). Here, the potential and unasserted claims available to the minor child are neither novel nor complex and, therefore, appointment of counsel is not warranted. Stith's Motion to Appoint Guardian Ad Litem or Counsel for Minor Plaintiff, (doc. 26), is therefore **DENIED**.

### B. All Official Capacity Claims Are Due to Be Dismissed Because Stith Has Not Alleged the Existence of an Unconstitutional Policy or Custom

After dismissing the claims that Stith asserts on behalf of her minor child, the court is left to consider the Section 1983 claims that she has brought on her own behalf in Counts One and Three. (Doc. 20 at 16). In these two claims, Stith has explicitly sued Superintendent Sutherland, Principal Kimbrell, Coach Smith, and Dr. Swindall in their official capacities as agents of Hartselle City Schools. (Doc. 20, ¶¶ 15, 17–19).[2] All official capacity claims in the Complaint are due to be **DISMISSED** because they are, in essence, against Hartselle City Schools and Stith has not met her burden for alleging Section 1983 claims against a municipal entity.

The Supreme Court has held that "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v.*

---

[2] Stith sues Dr. Clayton solely in his individual capacity. (Doc. 20, ¶ 16; Doc. 23 at 4).

*Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Accordingly, this court has held that Section 1983 claims against school officials "are functionally equivalent" to claims against the municipal entity that employs them. *Street v. Talladega City Bd. of Educ.*, No. 1:22-cv-614, 2024 WL 493902, at *3 (N.D. Ala. Feb. 8, 2024). Therefore, Stith's official capacity claims against Principal Kimbrell, Coach Smith, Dr. Swindall, and Superintendent Sutherland in Counts One and Three are against the entity of which they are agents, *Graham*, 473 U.S. at 165, and she is therefore attempting to state Section 1983 claims against Hartselle City Schools, *Street*, 2024 WL 493902, at *3.

The Supreme Court established the analytic framework for asserting a Section 1983 claim against a local government entity in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). In *Monell*, the Court held that local governmental entities may be subject to liability in a Section 1983 action only when the "execution of a government's policy or custom" was the "moving force of the constitutional violation." *Monell*, 436 U.S. at 694. *See also Hardy v. Town of Hayneville*, 50 F. Supp. 2d 1176, 1187 (M.D. Ala. 1999) ("Local governmental bodies such as school boards" are subject to the *Monell* framework). To succeed on a so-called *Monell* claim against a municipal entity, the plaintiff must trace his or her constitutional violation to "either an express policy or a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well

settled as to constitute a custom and usage with the force of law." *Cuesta v. Sch. Bd.*, 285 F.3d 962, 966 (11th Cir. 2002) (citation and quotation marks omitted). Pursuant to *Monell* and its progeny, this court regularly dismisses Section 1983 claims against local government entities—such as school boards—when the plaintiff fails to allege the existence of an unconstitutional policy or custom. *See, e.g.*, *Combs v. Etowah Cnty. Bd. of Educ.*, No. 4:24-cv-1197, 2025 WL 1970031, at *4 (N.D. Ala. July 16, 2025).

Synthesizing all of the above, Stith's claims against Principal Kimbrell, Coach Smith, Dr. Swindall, and Superintendent Sutherland in their official capacities "are functionally equivalent" to claims against the municipal entity that employs them. *Street*, 2024 WL 493902, at *3. Because Stith is, therefore, attempting to sue Hartselle City Schools, *Graham*, 473 U.S. at 165, she must allege that the constitutional violations forming the basis of Counts One and Three occurred pursuant to a policy or custom, *Monell*, 436 U.S. at 694, but she has failed to do so. Even when this court reads the Complaint with the deference due to *pro se* plaintiffs, *Dean*, 951 F.2d at 1213, Stith never alleges the existence of any policy or custom, much less one that harmed her or violated her constitutional rights. Indeed, the factual allegations in the Complaint are based wholly on individualized conduct by Defendants over a period of approximately three months as the parties dealt with sustained interpersonal conflicts, including the GroupMe incident, (doc. 20, ¶¶ 22–

27), the Dallas incidents, *id.*, ¶¶ 44–63, and the internal investigation, *id.*, ¶¶ 64–110. Stith never alludes to any policy or custom of Hartselle City Schools that was the "moving force" behind the alleged constitutional violations. Therefore, her Section 1983 claims against Hartselle City Schools fail as a matter of law, *Monell*, 436 U.S. at 694–95, and are due to be dismissed, *Combs*, 2025 WL 1970031, at *4. The court therefore **DISMISSES** Counts One and Three pursuant to Rule 12(b)(6) to the extent that Stith has sued Defendants in their official capacities. Because Stith has sued Superintendent Sutherland exclusively in her official capacity, (*see* doc. 20, ¶ 15; doc. 23 at 4), Superintendent Smith is dismissed from this action.

### C. Defendants Are Entitled to Qualified Immunity in their Individual Capacities

To recap: Count Two is due to be dismissed in its entirety because Stith may not represent her child *pro se* in federal court, and the official capacity claims in Counts One and Three must be dismissed under *Monell* because Stith has not alleged that she suffered a constitutional violation pursuant to an official policy or custom of Hartselle City Schools. Thus, the only claims remaining before the court are the individual capacity claims against Dr. Clayton, Principal Kimbrell, Coach Smith, and Dr. Swindall in Counts One and Three. The court finds these claims are due to be **DISMISSED** because Defendants are entitled to qualified immunity.

Qualified immunity is a doctrine that "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (quotation marks omitted). Qualified immunity relies on a burden-shifting framework recently summarized by the Eleventh Circuit thus:

> [Courts] use a burden-shifting analysis to determine whether an officer is entitled to qualified immunity. *Brooks v. Miller*, 78 F.4th 1267, 1280 (11th Cir. 2023). First, the officer "must show that he was acting within the scope of his discretionary authority when he committed the challenged acts." *Id.* If the officer establishes that he was acting within the scope of his discretionary authority, the burden then shifts to the plaintiff. *Id.* To overcome the qualified-immunity defense, the plaintiff must establish that "(1) the defendant violated a constitutional right, and (2) that constitutional right was 'clearly established' at the time of the defendant's actions." *Id.* (quoting *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022)).

*Donald v. Norris*, 131 F.4th 1255, 1263 (11th Cir. 2025). Courts are no longer required to first determine whether there was a constitutional violation before analyzing whether relevant constitutional rights are clearly established, and thus may skip straight to the second prong of the test. *Pearson*, 555 U.S. at 236.

For the second prong of the qualified immunity analysis, a plaintiff can demonstrate that a right is clearly established by identifying case law with indistinguishable facts, a broad statement of law in the Constitution, a statute, or case law, or conduct so egregious that it clearly violated a constitutional right. *DeMarcus v. Univ. of S. Ala.*, 133 F.4th 1305, 1317 (11th Cir. 2025) (citation omitted). Thus, if a defendant-official is acting within the scope of his or her discretionary authority,

he or she is presumptively entitled to qualified immunity that the plaintiff has the burden of overcoming. *See Donald*, 131 F.4th at 1263. "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation and quotation marks omitted). The court will consider whether the Defendants sued in their individual capacities were acting within the scope of their discretionary authority and, if so, whether Stith has overcome their qualified immunity by alleging that they violated a clearly established constitutional right.

i.    All of Stith's Allegations Arise from Actions Within Defendants' Discretionary Authority

A defendant-official sued in his or her individual capacity is entitled to qualified immunity from suit if his or her alleged actions occurred within the scope of his or her discretionary authority. *Donald*, 131 F.4th at 1263. To determine whether an official was acting in the scope of his or her discretionary authority, courts consider "the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.* (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263 (11th Cir. 2004)). *See also Holloman*, 370 F.3d at 1265 (an

17

official acts within the scope of discretionary authority while performing legitimate job-related functions through means that were within his or her power to realize).

The court agrees with Defendants that all of Stith's allegations against them arise from their discretionary authority because her "claims are premised on . . . decisions with respect to student discipline, the robotics team selection, the robotics team awards ceremony, and other school-related activities." (Doc. 23 at 8–9); *see also* doc. 20, ¶¶ 1–149. Because "the general nature of the defendant[s'] action[s]," *Donald*, 131 F.4th at 1263, shows they were performing legitimate job-related functions through means within their powers to utilize as agents of Hartselle City Schools, Dr. Clayton, Principal Kimbrell, Coach Smith, and Dr. Swindall were acting within the scope of their discretionary authority. *Holloman*, 370 F.3d at 1265. Accordingly, Stith has the burden of rebutting their qualified immunity from suit by alleging that they violated a constitutional right that was clearly established at the time. *Donald*, 131 F.4th at 1263. She must demonstrate both of these things—the violation of a constitutional right and that this right was clearly established—or Defendants' qualified immunity remains intact. *Brooks v. Miller*, 78 F.4th 1267, 1280 (11th Cir. 2023). The court will consider Counts One and Three in turn to explain why neither sufficiently alleges that Defendants violated a clearly established constitutional right.

ii.     Count One: First Amendment Retaliation

In Count One, Stith alleges that Defendants retaliated against her for exercising her First Amendment right to free speech. (Doc. 20, ¶¶ 150–54). The First Amendment protects the right to free speech, U.S. Const. amend. I, which includes the right not to suffer retaliation for such speech, *see, e.g.*, *Potter v. Williford*, 712 F. App'x 953, 955 (11th Cir. 2017) (per curiam). To state a First Amendment retaliation claim, a private citizen must plausibly allege: (1) he or she engaged in constitutionally protected speech, (2) the defendants' conduct in response to that speech adversely affected the protected speech, and (3) a causal connection between the two. *Turner v. Williams*, 65 F.4th 564, 579 (11th Cir. 2023). On the second prong, a "plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). "This requires 'significant' action that 'produces an injury or harm,'" *Posey v. Atlanta Pub. Schs.*, 722 F. Supp. 3d 1350, 1359 (N.D. Ga. 2024) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67–68 (2006)), and "petty slights, minor annoyances, and simple lack of good manners" cannot support a First Amendment retaliation claim, *White*, 548 U.S. at 68. Although such a test is necessarily fact-specific and defies a universal definition, it is instructive that the Eleventh Circuit has held that a plaintiff has met this burden in extreme circumstances such as "being

detained without probable cause; suffering a dislocated elbow . . . while being detained; and being involuntarily committed and forced to undergo a mental health examination." *Khoury v. Mia.-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1129–30 (11th Cir. 2021).

Stith's First Amendment retaliation claim fails because she has not alleged that Defendants adversely affected her protected speech. *Turner*, 65 F.4th at 579. Stith identifies the following actions as retaliatory: excluding her child from team recognition and further participation in the team, disciplining the child, preventing Stith from attending the awards ceremony, and "intimidating [Stith] through misuse of her child" by asking the child to call Stith to secure her attendance at the meeting. (Doc. 20, ¶ 152). When the court considers these allegations in the context of Stith's Complaint as a whole, it is clear that she is suing based on the type of interpersonal conflict that will often arise between a parent and the officials at her child's school. In other words, even accepting all the facts in the Complaint as true, Stith is attempting to state a First Amendment retaliation claim based on "petty slights, minor annoyances, and simple lack of good manners," which the Supreme Court has expressly forbidden. *White*, 548 U.S. at 68. However unpleasant such alleged actions might have been for Stith, they would not deter a person of ordinary firmness from exercising his or her First Amendment rights, *Bennett*, 423 F.3d at 1254, because they did not produce significant injury or harm, *Posey*, 722 F. Supp. 3d at 1359.

Moreover, Stith does not identify any law—whether case law with indistinguishable facts, a broad statement of law, or conduct so egregious that it clearly violated a constitutional right—that would have put Defendants on notice that any of their actions violated her First Amendment rights. *DeMarcus*, 133 F.4th at 1317; (*see generally* doc. 20). Therefore, as to Count One of the Complaint, the court finds that Stith has not alleged Defendants violated a clearly established First Amendment right, and thus Defendants are entitled to qualified immunity. *Donald*, 131 F.4th at 1263.

### iii.  Count III: Fourteenth Amendment

In Count Three, Stith alleges that Defendants' conduct violated her Fourteenth Amendment right to due process. (Doc. 20, ¶¶ 159–163). The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, which "has been interpreted to provide two kinds of due process protection: procedural due process and substantive due process," *East v. Clayton Cnty.*, 436 F. App'x 904, 912 (11th Cir. 2011) (per curiam) (citation omitted). Stith does not state specifically which type of due process claim she is asserting, (*see* doc. 20, ¶¶ 159–163), but the distinction is moot because neither would succeed.

In general, injury to reputation alone, even if caused by a state actor, does not implicate a liberty interest protected by the Due Process Clause. *Paul v. Davis*, 424

U.S. 693, 701–02 (1976). Under the "stigma-plus" doctrine, a plaintiff must allege not only stigmatizing statements but also the alteration or extinguishment of a right or legal state recognized by state law. *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1302–03 (11th Cir. 2001). As pleaded, the Complaint alleges reputational harm and exclusion from certain school-related activities. (Doc. 20, ¶¶ 56–78; 95–106). Those allegations do not plausibly plead the requisite "plus" element as Eleventh Circuit precedent defines it, nor do they plausibly allege the denial of constitutionally required process. *See Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) (per curiam). To the extent that Stith intended Count Three to be a procedural due process claim, it fails as a matter of law.

Insofar as the Fourteenth Amendment guarantees substantive due process, it protects only fundamental rights and prevents conduct that is so egregious that it "shocks the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998). *See also L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1329–31 (11th Cir. 2020). In the school context, the Eleventh Circuit has repeatedly emphasized that the conscience-shocking standard is demanding and that ordinary disciplinary disputes and administrative decisions typically do not implicate substantive due process. *See, e.g.*, *T.W. ex rel. Wilson v. Sch. Bd.*, 610 F.3d 588, 598–99 (11th Cir. 2010); *Davis v. Carter*, 555 F.3d 979, 982–83 (11th Cir. 2009); *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1375–76 (11th Cir. 2002). "Taken together, *Nix and Davis*

impose a high bar: even where a student *dies*, school officials' behavior does not shock the conscience if it is no more than reckless or deliberately indifferent." *Littlejohn v. Sch. Bd.*, 132 F.4th 1232, 1245 (11th Cir. 2025) (internal citations and quotations omitted). Taking the Complaint's factual allegations as true, the conduct alleged is not of the character or severity required to state a violation of a clearly established right to substantive due process under the Fourteenth Amendment. As stressed above, Stith's Complaint is based wholly on the alleged friction that will often ensue between parents and officials in an educational setting, and she has not alleged any conduct by Defendants that "shocks the conscience," *Lewis*, 523 U.S. at 846–47, as is required to clear the "high bar" for a Fourteenth Amendment substantive due process claim, *Littlejohn*, 132 F.4th at 1245.

Counts One and Three of Stith's Complaint arise from alleged actions within the scope of Defendants' discretionary authority and they are therefore entitled to qualified immunity. *Donald*, 131 F.4th at 1263. Stith has not met her burden for overcoming such immunity because she has not alleged enough facts for the court to find that Defendants violated a right that was clearly established under either the First or Fourteenth Amendments. *Id.* Accordingly, Counts One and Three of the Complaint are **DISMISSED** pursuant to Rule 12(b)(6) on the basis of Defendants' qualified immunity.

## CONCLUSION

Because Stith may not represent her child *pro se* in federal court, Count Two must be dismissed in its entirety and Count Three dismissed to the extent Stith seeks to represent her child. All claims against Defendants in their official capacities as agents of Hartselle City Schools in Counts One and Three are dismissed because Stith has not alleged that she suffered a constitutional violation pursuant to an official custom or policy. All claims in Counts One and Three asserted against Defendants in their individual capacities are dismissed because they are entitled to qualified immunity.

For the foregoing reasons, it is hereby **ORDERED**:

1.      Defendants' Motion to Dismiss, (doc. 23), is **GRANTED,** costs taxed as paid. To the extent the Third Amended Complaint, (doc. 20), asserts claims or seeks relief based on alleged constitutional injuries to Stith's child, those claims are **DISMISSED WITHOUT PREJUDICE**. Stith's remaining federal claims are **DISMISSED WITH PREJUDICE**. Stith has already amended her original complaint multiple times, (*see* doc. 1; doc. 9; doc. 16; doc. 20), but the defects identified above concern proper party status and the absence of plausible constitutional claims under controlling law and so further amendment would be futile, *see* Fed. R. Civ. P. 15(a)(2).

2.      To the extent Stith asserts any state-law claims, the court declines to exercise supplemental jurisdiction over them, 28 U.S.C. § 1367(c)(3), and such claims are **DISMISSED WITHOUT PREJUDICE**.

3.      All other pending motions, (doc. 26; doc. 36), are **DENIED AS MOOT**.

4.      The court will enter a separate final judgment.

5.      The Clerk of Court is **DIRECTED** to mail a copy of this Memorandum Opinion and Order to Plaintiff at her address on file.

       **DONE** and **ORDERED** on February 25, 2026.

_____
**HAROLD D. MOODY III**
UNITED STATES DISTRICT JUDGE